B6D (Official Form 6D) (12/07)

In re **Russell J. Smith,**      Case No.   **2:15-bk-51458**
        **Amanda Matson-Smith,**

Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS - AMENDED

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. 66603137<br><br>BAC Home Loans Servicing, L.P.<br>7105 Corporate Drive<br>Plano, TX 75024 | | H | Opened 8/01/04 Last Active 8/04/11<br>First Mortgage<br>Real Estate<br>Location: 2880 Boggs Road, Zanesville, OH 43701<br>Lot 3 in Sunset Acres Subdivision of Washington Township<br>Grantee: Russell J. Smith and Amanda | | | | | |
| | | | Value $      107,000.00 | | | | 95,935.41 | 0.00 |
| Account No. 89639544<br><br>Green Tree Servicing L<br>Po Box 6172<br>Rapid City, SD 57709 | | H | Opened 11/01/05 Last Active 4/30/10<br>Second Mortgage<br>Real Estate<br>Location: 2880 Boggs Road, Zanesville, OH 43701<br>Lot 3 in Sunset Acres Subdivision of Washington Township<br>Grantee: Russell J. Smith and Amanda | | | | | |
| | | | Value $      107,000.00 | | | | 43,289.00 | 32,224.41 |
| Account No. JL67-0399<br><br>Ohio Bureau of Workers' Compensation<br>Attn: Law Section Bankruptcy Unit<br>PO Box 15567<br>Columbus, OH 43215-0567 | | J | 10-31-2008<br>Judgment Lien<br>Real Estate<br>Location: 2880 Boggs Road, Zanesville, OH 43701<br>Lot 3 in Sunset Acres Subdivision of Washington Township<br>Grantee: Russell J. Smith and Amanda | | | | | |
| | | | Value $      107,000.00 | | | | 16,694.80 | 16,694.80 |
| Account No. 8058782<br><br>Ohio Bureau of Workers' Compensation<br>Attn: Law Section Bankruptcy Unit<br>PO Box 15567<br>Columbus, OH 43215-0567 | | J | 10-09-2009<br>Judgment Lien<br>Real Estate<br>Location: 2880 Boggs Road, Zanesville, OH 43701<br>Lot 3 in Sunset Acres Subdivision of Washington Township<br>Grantee: Russell J. Smith and Amanda | | | | | |
| | | | Value $      107,000.00 | | | | 2,412.33 | 2,412.33 |

    **2**     continuation sheets attached

Subtotal
(Total of this page)     158,331.54     51,331.54

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                          Best Case Bankruptcy

**B6D (Official Form 6D) (12/07) - Cont.**

In re   **Russell J. Smith,**
     **Amanda Matson-Smith**
_____,
                    Debtors

Case No.   **2:15-bk-51458**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS - AMENDED
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **2014TL01522** <br><br> **Ohio Bureau of Workers' Compensation** <br> **Attn: Law Section Bankruptcy Unit** <br> **PO Box 15567** <br> **Columbus, OH 43215-0567** | | J | **11-24-2014** <br> **Judgment Lien** <br> **Real Estate** <br> **Location: 2880 Boggs Road, Zanesville, OH 43701** <br> **Lot 3 in Sunset Acres Subdivision of Washington Township** <br> **Grantee: Russell J. Smith and Amanda** | | | | | |
| | | | Value $              **107,000.00** | | | | 1,716.32 | 1,716.32 |
| Account No. **2014TL01523** <br><br> **Ohio Bureau of Workers' Compensation** <br> **Attn: Law Section Bankruptcy Unit** <br> **PO Box 15567** <br> **Columbus, OH 43215-0567** | | J | **11-24-2014** <br> **Judgment Lien** <br> **Real Estate** <br> **Location: 2880 Boggs Road, Zanesville, OH 43701** <br> **Lot 3 in Sunset Acres Subdivision of Washington Township** <br> **Grantee: Russell J. Smith and Amanda** | | | | | |
| | | | Value $              **107,000.00** | | | | 1,943.84 | 1,943.84 |
| Account No. **2015TL00090** <br><br> **Ohio Bureau of Workers' Compensation** <br> **Attn: Law Section Bankruptcy Unit** <br> **PO Box 15567** <br> **Columbus, OH 43215-0567** | | J | **02-02-2015** <br> **Judgment Lien** <br> **Real Estate** <br> **Location: 2880 Boggs Road, Zanesville, OH 43701** <br> **Lot 3 in Sunset Acres Subdivision of Washington Township** <br> **Grantee: Russell J. Smith and Amanda** | | | | | |
| | | | Value $              **107,000.00** | | | | 1,952.37 | 1,952.37 |
| Account No. **2015TL00090** <br><br> **Ohio Bureau of Workers' Compensation** <br> **Attn: Law Section Bankruptcy Unit** <br> **PO Box 15567** <br> **Columbus, OH 43215-0567** | | J | **02-02-2015** <br> **Judgment Lien** <br> **Real Estate** <br> **Location: 2880 Boggs Road, Zanesville, OH 43701** <br> **Lot 3 in Sunset Acres Subdivision of Washington Township** <br> **Grantee: Russell J. Smith and Amanda** | | | | | |
| | | | Value $              **107,000.00** | | | | 2,412.33 | 2,412.33 |
| Account No. **JL75-0366** <br><br> **Ohio Department of Taxation** <br> **Attn: Bankruptcy Division** <br> **P.O. Box 530** <br> **Columbus, OH 43266-0030** | | J | **03-09-2010** <br> **Judgment Lien** <br> **Real Estate** <br> **Location: 2880 Boggs Road, Zanesville, OH 43701** <br> **Lot 3 in Sunset Acres Subdivision of Washington Township** <br> **Grantee: Russell J. Smith and Amanda** | | | | | |
| | | | Value $              **107,000.00** | | | | 1,068.76 | 1,068.76 |

Sheet   **1**   of   **2**   continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page)

| 9,093.62 | 9,093.62 |
|---|---|

B6D (Official Form 6D) (12/07) - Cont.

In re   **Russell J. Smith,**
     **Amanda Matson-Smith**
_____,
                   Debtors

Case No.   **2:15-bk-51458**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS - AMENDED
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | HWJC Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **JL75-0329**<br><br>**Ohio Department of Taxation**<br>**Attn: Bankruptcy Division**<br>**P.O. Box 530**<br>**Columbus, OH 43266-0030** | | J | **03-03-2010**<br>**Judgment Lien**<br>**Real Estate**<br>**Location: 2880 Boggs Road, Zanesville, OH 43701**<br>**Lot 3 in Sunset Acres Subdivision of Washington Township**<br>**Grantee: Russell J. Smith and Amanda** | | | | | |
| | | | Value $      **107,000.00** | | | | 4,402.53 | 4,402.53 |
| Account No. **JL76-0192**<br><br>**Ohio Department of Taxation**<br>**Attn: Bankruptcy Division**<br>**P.O. Box 530**<br>**Columbus, OH 43266-0030** | | J | **05-10-2010**<br>**Judgment Lien**<br>**Real Estate**<br>**Location: 2880 Boggs Road, Zanesville, OH 43701**<br>**Lot 3 in Sunset Acres Subdivision of Washington Township**<br>**Grantee: Russell J. Smith and Amanda** | | | | | |
| | | | Value $      **107,000.00** | | | | 838.53 | 838.53 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

Sheet  **2**  of  **2**  continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | Subtotal (Total of this page) | 5,241.06 | 5,241.06 |
|---|---|---|---|
| | Total (Report on Summary of Schedules) | 172,666.22 | 65,666.22 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

Image ID: 000001634561 Type: OFF
Kind: MORTGAGE ASSIGNMENT
Recorded: 01/07/2010 at 09:12:13 AM
Fee Amt: $48.00 Page 1 of 4
Inst# 201000000128
Muskingum County
Karen Vincent County Recorder

BK 2257 PG 822

## MORTGAGE ASSIGNMENT

**FOR VALUE RECEIVED**, as of October 28, 2009, the undersigned, Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender, does hereby sell, transfer, and assign to BAC Home Loans Servicing, L.P., fka, Countrywide Home Loans Servicing, L.P., 7105 Corporate Drive, Plano, TX 75024, its successors and assigns, all its right, title and interest in and to that certain mortgage in the original principal sum of $84,600.00, made, executed and delivered by Russell Smith to Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender, conveying the premises described in Exhibit "A" attached hereto, August 20, 2004, together with the note and indebtedness therein mentioned, said mortgage being recorded in Book 1891, Page 180, in the Office of the Recorder of Muskingum County, Ohio on August 27, 2004.  Permanent parcel number 70-80-01-02-000.

**IN WITNESS WHEREOF**, Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender, has caused this assignment to be executed by _____Susan McCaughan_____, its _____Assistant Vice President_____, this _23_ day of _Dec_, 2009.

> Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender
>
> BY: _____
>
> Print Name Susan McCaughan-Asst. Vice President
>
> Its: _____

Image ID: 000001634562 Type: OFF
Kind: MORTGAGE ASSIGNMENT
Page 2 of 4

BK 2257 PG 823

STATE OF ___California___ )
___Ventura___ ) ss.
COUNTY OF _____ )

    **BEFORE ME**, a Notary Public in and for said County and State, personally appeared _____Susan McCaughan_____, the ___Assistant Vice President___ of Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender, named herein and which executed the within instrument, who acknowledged that said instrument was signed on behalf of said corporation with the authority of its Board of Directors, that the signing of said instrument was his free act and deed, individually and as an officer of the corporation, and the free act and deed of said corporation.

    **IN TESTIMONY WHEREOF**, I have hereunto set my hand and official seal at _Simi Valley_, California this _____ day of _____, 2009.

_____
NOTARY PUBLIC

This Instrument Prepared By:
Carlisle, McNellie, Rini, Kramer & Ulrich Co., L.P.A.
24755 Chagrin Boulevard, Suite 200
Cleveland, Ohio 44122-5690
216-360-7200
09-9537, J09-5661

Image ID: 000001834583 Type: OFF
Kind: MORTGAGE ASSIGNMENT
Page 3 of 4
BK 2257 PG 824

## ACKNOWLEDGMENT

State of <u>California</u>
County of <u>Ventura</u>

On  <u>12/23/2009</u>  , 2009 , before me, <u>Cathy Ritchie</u>  ,a
notary public, personally appeared <u>Susan McCaughan</u>  who provided to me
on basis of satisfactory evidence to be the person whose name is subscribed to
the within instrument and acknowledged to me that she executed the same in her
authorized capacities and, that by her signature on the instrument the persons, or
the entity upon behalf of which the persons acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Cathy A. Ritchie_

CATHY A. RITCHIE
Commission # 1644370
Notary Public - California
Ventura County
My Comm. Expires Feb 10, 2010

Image ID: 000001634564 Type: OFF
Kind: MORTGAGE ASSIGNMENT
Page 4 of 4

BK **2257** PG **825**

# EXHIBIT A

## LEGAL DESCRIPTION

Situated in the County of Muskingum in the State of Ohio and in the Township of
Washington and bounded and described as follows:Being Lot Number Three (3) in
Sunset Acres Subdivision of Washington Township, as the same is designated and
delineated on the recorded plat thereof, of record in Plat Book 9, Page 55, of the Plat
Records of Muskingum County Ohio.

Premises commonly known as: 2880 Boggs Road, Zanesville, Ohio 43701

Permanent Parcel No. 70-80-01-02-000

## END OF LEGAL DESCRIPTION

When Recorded Return To: JOr-
Ohio Title Corporation
7085 Pearl Road          5661
Middleburg Heights, Ohio  44130

140

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Image ID: 000000635237 Type: OFF
Recorded: 08/27/2004 at 03:21:37 PM
Fee Amt: $140.00 Page 1 of 18
Instr# 200400013526
Muskingum County
Karen Vincent County Recorder

BK **1891** PG **180**

————————— [Space Above This Line For Recording Data] —————————

0400143                    00006660313708004
[Escrow/Closing #]              [Doc ID #]

# MORTGAGE

MIN 1000157-0004017883-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated AUGUST 20, 2004 , together with all Riders to this document.
**(B) "Borrower"** is

RUSSELL SMITH

**OHIO**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Page 1 of 15

Initials: _R.S. ms_

**-6A(OH)** (0201)    CHL (01/02)(d)    VMP MORTGAGE FORMS - (800)521-7291    **Form 3036 1/01**
CONV/VA





Image ID: 000000635238 Type: OFF
Page 2 of 16

BK **1891** PG **181**

DOC ID #: 00006660313708004

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is

AMERICA'S WHOLESALE LENDER

Lender is a CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

P.O. Box 660694, Dallas, TX 75266-0694

(E) "Note" means the promissory note signed by Borrower and dated    AUGUST 20, 2004    . The Note states that Borrower owes Lender

EIGHTY FOUR THOUSAND SIX HUNDRED and 00/100

Dollars (U.S. $ 84,600.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    SEPTEMBER 01, 2034    .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | 0 |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

-6A(OH) (0201)    CHL (01/02)    Page 2 of 15    Form 3036 1/01

DOC ID #: 0000666031370800A

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

| COUNTY | of | MUSKINGUM | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Image ID: 000000636239 Type: OFF
Page 3 of 16
BK 1891 PG 182

Parcel ID Number:                                    which currently has the address of

                         2880 BOGGS RD, ZANESVILLE
                                    [Street/City]

Ohio 43701-9177 ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(OH) (0201)      CHL (01/02)           Page 3 of 15                    Initials:              Form 3036 1/01

Image ID: 000000638240 Type: OFF
Page 4 of 16

BK **1891** PG **183**

DOC ID #: 0000666031370800004

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any,

-6A(OH) (0201)    CHL (01/02)              Page 4 of 15

Initials

Form 3036 1/01

Image ID: 000000635241 Type: OFF
Page 5 of 16
BK 1891 PG 184

DOC ID #: 00006660313708004

or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded;

-6A(OH) (0201)    CHL (01/02)    Page 5 of 15    Initials: ___    Form 3036 1/01

Image ID: 000000635242 Type: OFF
Page 6 of 16

BK **1891** PG **185**

DOC ID #: 00006660313708004

or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not

Initials: _____

Form 3036 1/01

-6A(OH) (0201)       CHL (01/02)          Page 6 of 15



Image ID: 000000635243  Type: OFF
Page 7 of 16

BK **1891** PG **186**

DOC ID #: 0000666031370800A

economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a

-6A(OH) (0201)    CHL (01/02)    Page 7 of 15    Initials: S.S. M.S.    Form 3036 1/01



Image ID: 000000635244 Type: OFF
Page 8 of 16

BK **1891** PG **187**

DOC ID #: 00006660313708004

bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(OH) (0201)        CHL (01/02)              Page 8 of 15                    Initials: _____    Form 3036 1/01

Image ID: 000000538245 Type: OFF
Page 9 of 16
BK **1891** PG **188**

DOC ID #: 0000666031370800 4

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

-6A(OH) (0201)      CHL (01/02)          Page 9 of 15          Initials: _____      Form 3036 1/01



Image ID: 000000635246 Type: OFF
Page 10 of 16
BK **1891** PG **189**

DOC ID #: 0000666313708004

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be

-6A(OH) (0201)        CHL 01/02)            Page 10 of 15            Form 3036 1/01

Image ID: 000000638247 Type: OFF
Page 11 of 16

BK 1891 PG 190

DOC ID #: 0000666031370800 4

only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or, cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Initials:

-6A(OH) (0201)        CHL (01/02)            Page 11 of 15                                    Form 3036 1/01

DOC ID #: 00006660313708004

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Image ID: 000000638248 Type: OFF
Page 12 of 16
BK 1891 PG 191
Page 12 of 15
Initials: _____
Form 3036 1/01
Book: 1891 Page: 180 Seq: 12

DOC ID #: 0000666031370800 4

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, MUSKINGUM                County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

Image ID: 000000635249 Type: OFF
Page 13 of 16

BK **1891** PG **192**

-6A(OH) (0201)     CHL (01/02)          Page 13 of 15          Initials: _____      Form 3036 1/01

DOC ID #: 0000666031370804

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____(Seal)
                            RUSSELL SMITH                   -Borrower

_____   _Mandy Mason Smith_ (Seal)
                                                  -Borrower

                            _____(Seal)
                                                  -Borrower

                            _____(Seal)
                                                  -Borrower

Image ID: 000000635250 Type: OFF
Page 14 of 16
BK 1891 PG 193

-6A(CH) (0201)   CHL (01/02)      Page14 of 15          Form 3036 1/01

DOC ID #: 0000666031370B004

**STATE OF OHIO,**                                        **County ss:**

This instrument was acknowledged before me this 20ᵗʰ of August, 2004        , by



SAMUEL JAMES CRONIN
Notary Public, State of Ohio
My Commission Expires
3/11/08

My Commission Expires: 3/11/08

Notary Public

This instrument was prepared by MARCUS RICHARDSON
555 METRO PLACE N. #375 B, DUBLIN, OH 43017

Image ID: 000000635251 Type: OFF
Page 15 of 16
BK 1891 PG 194

Initials

-6A(OH) (0201)        CHL (01/02)        Page 15 of 15        Form 3036 1/01

Prepared by: MARCUS RICHARDSON

**AMERICA'S WHOLESALE LENDER**

Branch #: 0000943
555 METRO PLACE N. #375 B
DUBLIN, OH 43017
Phone: (614)791-4191
Br Fax No.: (614)792-3004

DATE:        08/20/2004
CASE #:
DOC ID#:   00006660313708004
BORROWER: RUSSELL SMITH
PROPERTY ADDRESS: 2880 BOGGS RD
                       ZANESVILLE, OH 43701-9177

**LEGAL DESCRIPTION EXHIBIT A**

Being Lot Number Three (3) in Sunset Acres Subdivision of Washington Township, as the same is designated on the recorded plat thereof, of record in Plat Book 9, page 55, of the Plat Records of Muskingum County, Ohio.

The above described lot is subject to the restrictions, reservations and conditions as shown on the recorded plat above referred to.

Being the same premises conveyed by Robert E. Pollock and Joanne Pollock, his wife, and Bobby R. King, unmarried, to Ralph E. Rinard and Norma L. Rinard by Warranty Deed dated April 1, 1960 and recorded in Muskingum County Deed Book 496 at page 408.

Image ID: 000000838282 Type: OFF
Page 16 of 16

BK **1891** PG **195**

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)



* 2 3 9 9 1 *



* 0 6 8 8 0 3 1 3 7 0 0 0 0 0 1 0 0 6 A *

Image ID: 00000211981 Type: OFF
Recorded: 11/14/2005 at 09:35:38 AM
Fee Amt: $52.00 Page 1 of 5
Instr# 200500016383
Muskingum County
Karen Vincent County Recorder

BK 1990 PG 176

Loan No:   8208899
Borrower:  RUSSELL SMITH

Data ID: 206

Return to:   THE HONOR STATE BANK
             ATTENTION: CLOSING DEPT
             4349 NATIONAL RD W
             RICHMOND, IN 47374

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: 100282400082088997

THIS MORTGAGE is made this 4th day of November, 2005, between the Mortgagor,
RUSSELL SMITH , MARRIED   AMANDA SMITH married

(herein "Borrower"), whose current mailing address is
2880 BOGGS RD, ZANESVILLE, OHIO 43701-9177                                    and
THE HONOR STATE BANK, A STATE BANK, organized and existing under the laws of the State of MICHIGAN,
whose address is PO BOX 67 2254 HENRY STREET          HONOR, MI 49640

(herein "Lender").
WHEREAS, this Security Instrument is given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. ("MERS"). MERS is a separate corporation that is acting solely as nominee for Lender (as hereinabove defined)
and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized
and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS.
WHEREAS, Borrower is indebted to Lender in the principal sum of **FORTY-THREE THOUSAND FOUR
HUNDRED FIVE and NO/100-----Dollars (U.S. $ 43,405.00)**, which indebtedness is evidenced by Borrower's note dated
**November 4, 2005** and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal
and interest, with the balance of indebtedness, if not sooner paid, due and payable on **November 9, 2020;**
TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage;
and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage,
grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and
assigns of MERS, the following described property located in the County of MUSKINGUM, State of Ohio:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 2880 BOGGS RD,                                       ZANESVILLE,
                                              [Street]                                          [City]
Ohio        43701-9177                                      (herein "Property Address");
            [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage;
and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are
hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but
not limited to, releasing and canceling this Security Instrument.
Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower
covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to encumbrances of record.

**OHIO** - SECOND MORTGAGE - 12/86 - FNMA/FHLMC UNIFORM INSTRUMENT

Form 3836    (Page 1 of 4 Pages)

Image ID: 000000911982 Type: OFF
Page 2 of 5
BK 1990 PG 177

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.**  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.**  Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.  Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution).  Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents.  Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds.  If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender.  If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due.  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld.  All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold.  If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.**  If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.  If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage.  Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof.  Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.**  Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**Form 3836   12/86**   *(Page 2 of 4 Pages)*

Image ID: 000000911983 Type: OFF
Page 3 of 6

BK**1990**PG**178**

Loan No:   8208899

Data ID: 206

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, court costs and costs of documentary evidence, abstracts and title reports.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**Form 3836   12/86**   *(Page 3 of 4 Pages)*



Image ID: 00000811984 Type: OFF
Page 4 of 5

BK **1990** PG **179**

**19. Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Advances to Protect Security.** Disbursements made by Lender pursuant to paragraph 7 hereof, such as those for the payment of taxes, assessments, insurance premiums or costs incurred for the protection of the Property, shall be advances made pursuant to Section 5301.233 of the Ohio Code.

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_____(Seal)            _____(Seal)
AMANDA SMITH —Borrower                      RUSSELL SMITH —Borrower


State of    OHIO                              §
County of   Muskingum                        §
    The foregoing instrument was acknowledged before me this 4th of November , 20 05 , by

RUSSELL SMITH AND AMANDA SMITH    , Married



My commission expires: 2-14-10            Angie R Baldwin
                                                        (Printed Name)

[Seal]

ANGIE R. BALDWIN
Notary Public, State of Ohio
My Commission Expires
2-14-2010

This instrument was prepared by:
Middleberg, Riddle & Gianna
717 N. Harwood, Suite 2400
Dallas, TX  75201

**Form 3836**   **12/86**   *(Page 4 of 4 Pages)*

Image ID: 000000911965 Type: OFF
Page 5 of 5

BK **1990** PG **180**

## EXHIBIT "A"

### LEGAL DESCRIPTION

Case Number: 05-00276

Being Lot Number Three (3) in Sunset Acres Subdivision of Washington Township, as the same is designated on the recorded plat thereof, of record in Plat Book 9, page 55, of the Plat Records of Muskingum County, Ohio.

© StreamLine Legal Description - Exhibit "A" Rev. 10/29/2003 9:28 AM

## JL76-0192

| | | | |
|---|---|---|---|
| **Case Type:** | JUDGMENT LIEN | **Case Status:** | Open |
| **Status Date:** | 05/10/2010 | **File Date:** | 05/10/2010 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

| All Information | Party | Judgment | Docket | Disposition |

### Party Information

**OHIO, STATE OF, DEPARTMENT OF TAXATION** - Plaintiff

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code        Phone Number** |

More Party Information

**SMITH, RUSSELL J.** - Defendant

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code        Phone Number** |

More Party Information

### Liens/Judgments

| **Court** | **County** MUSKINGUM | **State** OH | **Rendered Date** 05/01/2010 |
|---|---|---|---|
| **Case #** 8567364 | **Foreign #** | **Execution #** | |
| **Case Title** | OHIO, STATE OF, DEPARTMENT OF TAXATION vs RUSSELL J. SMITH | **Attorney** | |
| **Journal** | **Page** | **Filed** | **Released** |

### Judgments:

| **Amount** | **Interest** | **Per** | **From Date** | **Cost** |
|---|---|---|---|---|
| $838.53 | | | | |

## Docket Information

| Date | Docket Text | Amount |
|------|-------------|--------|
| 05/10/2010 | AMOUNT OF JUDGMENT IS: $838.53 | |

## Case Disposition

| Disposition | Date | Case Judge |
|-------------|------|------------|
| Undisposed | | |

## 2014 TL 01522

**Case Type:** TAX LIEN

**Status Date:** 11/24/2014

**Case Judge:**

**Next Event:**

**Case Status:** Open

**File Date:** 11/24/2014

**DCM Track:**

All Information | Party | Judgment | Disposition

### Party Information

**SMITH, RUSSELL J** - Debtor

| | |
|---|---|
| **DOB** | **Address** 2880 BOGGS RD |
| **DOD** | ZANESVILLE, OH 43701 |
| **Disposition** | **Phone** |
| **Disp Date** | **Alias** |

| **Attorney/Bar Code** | **Phone Number** |
|---|---|

More Party Information

**ALL TREE PROS LLC** - Debtor

| | |
|---|---|
| **DOB** | **Address  Phone** |
| **DOD** | |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code     Phone Number** |

More Party Information

**BUREAU OF WORKERS COMPENSATION** - Creditor

| | |
|---|---|
| **DOB** | **Address  Phone** |
| **DOD** | |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code     Phone Number** |

More Party Information

### Liens/Judgments

| **Court** | **County** | **State** |
|---|---|---|
| **Case #** | | |
| **Case Title** | | |
| **Journal** | **Page** | **Filed** 9:15 am |
| **Serial #** 12731274 | **Tax Account #** 12731274 | **Tax Amount** $1,716.32 |

| Tax Lien Rendered | Tax Lien Released | Execution Case # |
|---|---|---|
| 11/15/2014 | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Undisposed | | |

## 2014 TL 01523

**Case Type:** TAX LIEN                          **Case Status:** Open

**Status Date:** 11/24/2014                      **File Date:** 11/24/2014

**Case Judge:**                                  **DCM Track:**

**Next Event:**

| All Information | Party | Judgment | Disposition |

### Party Information

**SMITH, RUSSELL J** - Debtor

**DOB**
**DOD**
**Disposition**                    **Address** 2880 BOGGS RD
                                             ZANESVILLE, OH 43701
                                    **Phone**
**Disp Date**                       **Alias**

**Attorney/Bar Code**        **Phone Number**

                                                **More Party Information**

**ALL TREE PROS LLC** - Debtor

**DOB**
**DOD**                             **Address  Phone**
**Disposition**                     **Alias**
**Disp Date**                       **Attorney/Bar Code**        **Phone Number**

                                                **More Party Information**

**BUREAU OF WORKERS COMPENSATION** - Creditor

**DOB**
**DOD**                             **Address  Phone**
**Disposition**                     **Alias**
**Disp Date**                       **Attorney/Bar Code**        **Phone Number**

                                                **More Party Information**

### Liens/Judgments

| **Court** | **County** | **State** |
|---|---|---|
| **Case #** | | |
| **Case Title** | | |
| **Journal** | **Page** | **Filed** |
| | | 9:15 am |
| **Serial #** | **Tax Account #** | **Tax Amount** |
| 12292515 | 12292515 | $1,943.84 |

| Tax Lien Rendered | Tax Lien Released | Execution Case # |
|---|---|---|
| 11/15/2014 | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Undisposed | | |

## 2015 TL 00090

| | | | |
|---|---|---|---|
| **Case Type:** | TAX LIEN | **Case Status:** | Open |
| **Status Date:** | 02/02/2015 | **File Date:** | 02/02/2015 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

| All Information | Party | Judgment | Disposition |
|---|---|---|---|

### Party Information

**SMITH, RUSSELL J** - Debtor

| | | |
|---|---|---|
| **DOB** | **Address** | 2880 BOGGS RD |
| **DOD** | | ZANESVILLE, OH 43701 |
| **Disposition** | **Phone** | |
| **Disp Date** | **Alias** | |

| **Attorney/Bar Code** | **Phone Number** |
|---|---|

More Party Information

**ALL TREE PROS LLC** - Debtor

| | |
|---|---|
| **DOB** | **Address  Phone** |
| **DOD** | |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code        Phone Number** |

More Party Information

**BUREAU OF WORKERS COMPENSATION** - Creditor

| | |
|---|---|
| **DOB** | **Address  Phone** |
| **DOD** | |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code        Phone Number** |

More Party Information

### Liens/Judgments

| **Court** | **County** | **State** |
|---|---|---|
| **Case #** | | |
| **Case Title** | | |
| **Journal** | **Page** | **Filed** 4:00 pm |
| **Serial #** 12902927 | **Tax Account #** 12902927 | **Tax Amount** $1,952.37 |

## JL67-0399

**Case Type:** JUDGMENT LIEN

| | | | |
|---|---|---|---|
| **Case Status:** | Open | | |
| **Status Date:** | 10/31/2008 | **File Date:** | 10/31/2008 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

| All Information | Party | Judgment | Docket | Disposition |

### Party Information

**OHIO, STATE OF, BUREAU OF WORKERS' COMPENSATION** - Plaintiff

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code      Phone Number** |

More Party Information

**SMITH, RUSSELL J.** - Defendant

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code      Phone Number** |

More Party Information

**STUMP MUNCHERS** - Defendant

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code      Phone Number** |

More Party Information

### Liens/Judgments

| Court | County MUSKINGUM | State OH | Rendered Date 09/20/2008 |
|---|---|---|---|
| **Case #** 7447383 | **Foreign #** | **Execution #** | |
| **Case Title** | OHIO, STATE OF, BUREAU OF WORKERS' COMPENSATION vs RUSSELL J. SMITH | **Attorney** | |
| **Journal** | **Page** | **Filed** | **Released** |

## JL73-0522

**Case Type:** JUDGMENT LIEN          **Case Status:** Open

**Status Date:** 10/09/2009          **File Date:** 10/09/2009

**Case Judge:**          **DCM Track:**

**Next Event:**

All Information | Party | Judgment | Docket | Disposition

## Party Information

**OHIO, STATE OF, BUREAU OF WORKERS' COMPENSATION** - Plaintiff

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code          Phone Number** |

More Party Information

**SMITH, RUSSELL J.** - Defendant

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code          Phone Number** |

More Party Information

**STUMP MUNCHERS** - Defendant

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code          Phone Number** |

More Party Information

## Liens/Judgments

| **Court** | **County** MUSKINGUM | **State** OH | **Rendered Date** 09/26/2009 |
|---|---|---|---|
| **Case #** 8058782 | **Foreign #** | **Execution #** | |
| **Case Title** | OHIO, STATE OF, BUREAU OF WORKERS' COMPENSATION vs RUSSELL J. SMITH | **Attorney** | |
| **Journal** | **Page** | **Filed** | **Released** |

## Judgments:

| Amount | Interest | Per | From Date | Cost |
|--------|----------|-----|-----------|------|
| $2,412.33 | | | | |

## Docket Information

| Date | Docket Text | Amount |
|------|-------------|--------|
| 10/09/2009 | AMOUNT OF JUDGMENT IS: $2,412.33 | |

## Case Disposition

| Disposition | Date | Case Judge |
|-------------|------|------------|
| Undisposed | | |

## JL75-0329

| | | | |
|---|---|---|---|
| **Case Type:** | JUDGMENT LIEN | **Case Status:** | Open |
| **Status Date:** | 03/03/2010 | **File Date:** | 03/03/2010 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

**All Information** | **Party** | **Judgment** | **Disposition**

### Party Information

**OHIO, STATE OF, DEPARTMENT OF TAXATION** - Plaintiff

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code          Phone Number** |
| | More Party Information |

**SMITH, RUSSELL J** - Defendant

| | |
|---|---|
| **DOB** | |
| **DOD** | **Address  Phone** |
| **Disposition** | **Alias** |
| **Disp Date** | **Attorney/Bar Code          Phone Number** |
| | More Party Information |

### Liens/Judgments

| **Court** | **County** | **State** | **Rendered Date** |
|---|---|---|---|
| COMMON PLEAS | MUSKINGUM | OH | 02/13/2010 |

| **Case #** | **Foreign #** | **Execution #** | |
|---|---|---|---|
| 8461106 | | | |

| **Case Title** | **Attorney** |
|---|---|
| OHIO, STATE OF, DEPARTMENT OF TAXATION vs RUSSELL J SMITH | |

| **Journal** | **Page** | **Filed** | **Released** |
|---|---|---|---|
| | | | |

### Judgments:

| **Amount** | **Interest** | **Per** | **From Date** | **Cost** |
|---|---|---|---|---|
| $4,402.53 | | | | |

## JL75-0366

| | | | |
|---|---|---|---|
| **Case Type:** | JUDGMENT LIEN | **Case Status:** | Open |
| **Status Date:** | 03/09/2010 | **File Date:** | 03/09/2010 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

| All Information | Party | Judgment | Docket | Disposition |
|---|---|---|---|---|

### Party Information

**OHIO, STATE OF, DEPARTMENT OF TAXATION** - Plaintiff

| | | |
|---|---|---|
| **DOB** | | |
| **DOD** | **Address  Phone** | |
| **Disposition** | **Alias** | |
| **Disp Date** | **Attorney/Bar Code** | **Phone Number** |

More Party Information

**SMITH, RUSSELL J.** - Defendant

| | | |
|---|---|---|
| **DOB** | | |
| **DOD** | **Address  Phone** | |
| **Disposition** | **Alias** | |
| **Disp Date** | **Attorney/Bar Code** | **Phone Number** |

More Party Information

### Liens/Judgments

| **Court** | **County** MUSKINGUM | **State** OH | **Rendered Date** 02/27/2010 |
|---|---|---|---|
| **Case #** 8496145 | **Foreign #** | **Execution #** | |
| **Case Title** | OHIO, STATE OF, DEPARTMENT OF TAXATION vs RUSSELL J. SMITH | **Attorney** | |
| **Journal** | **Page** | **Filed** | **Released** |

**Judgments:**

| **Amount** | **Interest** | **Per** | **From Date** | **Cost** |
|---|---|---|---|---|
| $1,068.76 | | | | |

## Docket Information

| Date | Docket Text | Amount |
|------|-------------|--------|
| 03/09/2010 | AMOUNT OF JUDGMENT IS: $1,068.76 | |

## Case Disposition

| Disposition | Date | Case Judge |
|-------------|------|------------|
| Undisposed | | |

## CERTIFICATE OF SERVICE (LBR 9013-3)

      I hereby certify that on <u>April 21, 2015 in the year of Our Lord</u>, a copy of the foregoing <u>Amended Schedule D</u> was served on the following registered ECF participants, electronically through the court's ECF System at the email address registered with the Court:

Asst US Trustee (Col)
Edward Henry Cahill on behalf of Creditor Nationstar Mortgage, LLC
Mitchell Marczewski on behalf of Debtor Russell J Smith
Mitchell Marczewski on behalf of Joint Debtor Amanda Matson-Smith
Frank M Pees, Chapter 13 Trustee

And on the following by ordinary U.S. Mail addressed to:

- Russell J. Smith, 2880 Boggs Rd, Zanesville OH 43701
- Amanda Matson-Smith, 2880 Boggs Rd, Zanesville OH 43701
- BAC Home Loans Servicing, L.P., 7105 Corporate Drive, Plano TX 75024
- Green Tree Servicing L, Po Box 6172, Rapid City SD 57709
- Ohio Bureau of Workers' Compensation, Attn: Law Section Bankruptcy Unit, PO Box 15567, Columbus OH 43215
- Ohio Department of Taxation, Attn: Bankruptcy Division, P.O. Box 530, Columbus OH 43266

*/s/ Mitchell C. Marczewski*
**MITCHELL C. MARCZEWSKI (0073258)**